**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1395
_____

UNITED STATES OF AMERICA

v.

ANTHONY SPENCE,
                    Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Crim. No. 2-09-cr-00682-003)
District Judge:  Honorable Juan R. Sanchez
_____

Submitted Under Third Circuit LAR 34.1(a)
January 16, 2014
_____

Before: RENDELL, ROTH and BARRY, Circuit Judges

(Filed: February 4, 2014)
_____

OPINION
_____

BARRY, Circuit Judge

Anthony Spence was convicted after trial of one count of conspiracy to distribute

controlled substances, in violation of 21 U.S.C. § 846, and one count of conspiracy to

introduce misbranded drugs into interstate commerce, in violation of 18 U.S.C. § 371.

He was sentenced to a total of 70 months' imprisonment. Spence now appeals his conviction and sentence, arguing that the District Court erred at trial, when it admitted into evidence statements made by a non-testifying co-defendant at a civil deposition, and at sentencing, when it applied an aggravating role enhancement pursuant to § 3B1.1(a) of the Sentencing Guidelines. We have jurisdiction pursuant to 28 U.S.C. § 1291, and will affirm.

## I.

The evidence at trial established that from 2003 to 2010, Spence owned and operated The Spence Group and the websites PricebusterRX.com, PricebustersUSA.com, and premierskincare.com, which sold prescription drugs, including controlled substances, over the internet. Customers could request a prescription by answering an online or telephone questionnaire, without visiting a doctor in person; Spence hired and paid doctors to review the customers' responses and issue prescriptions. Spence also paid a pharmacy operated by co-defendant Wayne White, a licensed pharmacist, to fill and ship the prescriptions. In connection with this business, Spence operated two offices, in Richmond, Virginia, and Miramar, Florida, and hired and employed at least eight individuals. He also contracted with a website developer and an e-commerce payment processing company to support his business.

On February 2, 2011, Spence was charged in a second superseding indictment with conspiracy to distribute controlled substances, distribution of controlled substances, conspiracy to introduce misbranded drugs into interstate commerce, and mail fraud.

2

Spence proceeded to trial and was tried jointly with co-defendant White, who was also charged with money laundering offenses.

At trial, the government sought to introduce statements from a deposition of White, taken in connection with a civil lawsuit brought against White and others by the family of an individual who had purchased drugs over the internet. Spence objected, arguing that the testimony was prejudicial and would violate his Sixth Amendment right to confrontation because he lacked the ability to cross-examine White. The government argued that the deposition did not present a Confrontation Clause issue because White's statements did not mention Spence[1] and were made in the context of a civil deposition. The District Court determined that the testimony was admissible and that any prejudice could be addressed with a limiting instruction. Spence then moved for severance, which the District Court also denied.

Prior to playing the recording of the deposition testimony, the government briefly described the nature of the recording to the jury, and stated: "Neither Anthony Spence

---

[1] The only portion of the deposition testimony that pertained to Spence was one question at the beginning of the recording, in which White was asked, "Do you have a contract with PricebustersRX?" to which he answered, "No." (Supp. App. 367.) This was obviously false, as a copy of the contract between Spence and White was admitted at trial and Spence testified that they did have such a contract. Although the deposition testimony did not reference or inculpate Spence in criminal conduct, it was arguably prejudicial to Spence. It was evident from the deposition testimony that the civil lawsuit involved an internet drug purchasing scheme similar to the scheme described in the second superseding indictment, and the attorney taking the deposition aggressively questioned White with respect to this scheme, challenging him in particular on the issue of whether a valid doctor-patient relationship could exist (and, by extension, whether a prescription could be valid) where circumstances strongly suggested that the doctor and patient had had no direct communication.

3

nor the Spence Group were named in the lawsuit to which this deposition pertains."

(Supp. App. 366-67.) After the recording was played, the District Court instructed the

jury:

> I just want to give you a limiting instruction that the purpose and sole
> purpose of the testimony that you just heard, and that was the testimony of
> Mr. Wayne White, is to be admitted and only considered evidence in the
> case of the government against Mr. Wayne White and for no other purpose.
> You cannot consider that as any evidence whatsoever in the case of
> Anthony Spence. So that's the limited purpose for which that evidence was
> submitted to you.

(Id. at 404.) In the government's closing argument, it twice referenced the deposition and

replayed a portion of it. The government stated:

> [T]he lawsuit was filed by a customer – [indiscernible] – customer who had
> a prescription filled online, the same kind of – the same way that Anthony
> Spence's prescriptions were filled and obtained. The lawsuit was filed in
> 2007. It only named Wayne White as the defendant. It had nothing to do
> with Anthony Spence's business.

(Id. at 637.) At the conclusion of the case, the District Court also instructed the jury:

> I caution you that you may consider Wayne White's statements to the DEA
> and – DEA, regulatory agencies and in deposition only in resolving whether
> the defendant, Mr. Wayne White, is guilty or not guilty. You may not
> consider or discuss this evidence in any way in resolving whether Anthony
> Spence is guilty or not guilty.

(Id. at 675.)

Spence testified in his own defense at trial; White did not testify. On October 15,

2012, following a nine-day trial, Spence was convicted of one count of conspiracy to

distribute controlled substances and one count of conspiracy to introduce misbranded

drugs into interstate commerce. He was acquitted of the other charges.

4

At sentencing, the District Court applied a four-level aggravating role enhancement pursuant to § 3B1.1(a), finding that Spence had acted as an organizer or leader of a criminal activity that involved five or more participants. Spence objected and argued that although he had recruited doctors and hired employees in connection with his business, he did not direct or lead the doctors or employees to engage in illegal activity. The District Court concluded that the enhancement applied because the evidence established that Spence was the owner, operator, and leader of the Pricebuster website, that he controlled the business, and that he hired or entered into agreements with doctors, the pharmacy (i.e., White), and his employees to support the business.

With the four-level enhancement, Spence's total offense level was 26. His Guidelines range, reflecting Criminal History Category I, was 63-72 months.[2] On January 30, 2013, the District Court imposed a sentence of 60 months' imprisonment for conspiracy to distribute controlled substances and 10 months' imprisonment for conspiracy to introduce misbranded drugs into interstate commerce, to run consecutively for a total term of imprisonment of 70 months.[3]

## II.

We review a district court's decision as to the admissibility of evidence for abuse of discretion. United States v. Serafini, 233 F.3d 758, 768 n.14 (3d Cir. 2000). Our

---

[2] While ordinarily a Total Offense Level of 26 and a Criminal History Category of I would result in a Guidelines range of 63-78 months, here the statutory maximum on the counts of conviction was 72 months.

[3] White was also convicted on several counts; he was sentenced to 108 months' imprisonment.

review is plenary, however, with respect to a district court's interpretation of the Federal Rules of Evidence, relevant caselaw, and the Confrontation Clause. United States v. Mitchell, 145 F.3d 572, 576 (3d Cir. 1998). We review factual determinations underlying application of the sentencing guidelines for clear error, United States v. Helbling, 209 F.3d 226, 242-43 (3d Cir. 2000), and we will reverse "only if we are left with a definite and firm conviction that a mistake has been made." United States v. Dent, 149 F.3d 180, 189 (3d Cir. 1998).

### A. Admissibility of Deposition Testimony

The Confrontation Clause "applies to 'witnesses' against the accused – in other words, those who 'bear testimony.'" Crawford v. Washington, 541 U.S. 36, 51 (2004). "[A]t its core, the Confrontation Clause is concerned with 'testimonial' hearsay." United States v. Berrios, 676 F.3d 118, 125 (3d Cir. 2012). The admission of White's deposition testimony at the joint trial did not implicate Spence's Confrontation Clause rights because White's testimony was not offered against Spence and did not constitute testimonial hearsay. The testimony was properly admitted against White as a non-hearsay statement of a party-opponent under Federal Rule of Evidence 801(d)(2).

On appeal, Spence does not cite or raise any argument under Bruton v. United States, 391 U.S. 123 (1968). Even if we construed his Confrontation Clause argument as Bruton claim, however, it would fail. In Bruton, the Supreme Court held that in the context of a joint trial, a defendant's Sixth Amendment rights are violated when statements of a non-testifying co-defendant that implicate the defendant are admitted at

trial, even where the court provides a limiting instruction. 391 U.S. at 126. In Bruton, however, the Court recognized a "narrow exception" to the general principle that the jury is presumed to follow the court's instructions, applicable only when the non-testifying co-defendant's statement implicates the defendant. Richardson v. Marsh, 481 U.S. 200, 207 (1987). Because White's statement did not implicate Spence in criminal conduct, the Bruton exception is not applicable, and the jury is presumed to have followed the District Court's limiting instructions. See, e.g., United States v. Bryant, 655 F.3d 232, 252 (3d Cir. 2011) ("[W]e generally presume that juries follow their instructions.").

## B. Application of Aggravating Role Enhancement

Section 3B1.1(a) provides that a defendant's offense level may be increased by four levels if the defendant "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." The Commentary to § 3B1.1 provides that in determining whether to apply this enhancement:

> Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1, cmt. n.4 (2012). We have held that "to be considered an organizer or leader, the defendant must have exercised some degree of control over others involved in commission of the offense." Helbling, 209 F.3d at 243 (internal quotation marks omitted).

7

Spence argues that the District Court erred in applying this role enhancement because he lacked control over the doctors he hired, who acted independently in evaluating the customer questionnaires and determining whether to issue prescriptions. The District Court's factual findings supporting application of the enhancement, however, are not clearly erroneous: the evidence at trial demonstrated that Spence established, owned, and operated the websites PricebusterRX.com, PricebustersUSA.com, and premierskincare.com and that he recruited and hired employees and doctors to work in connection with the websites. Spence created and oversaw the system through which the doctors issued prescriptions, and he regularly followed up and checked in with the doctors regarding their work. The fact that the doctors exercised their own professional judgment in the context of their work for Spence does not alter the fact that, ultimately, they were recruited by, hired by, and answerable to Spence. Cf. United States v. Belletiere, 971 F.2d 961, 970-72 (3d Cir. 1992) (holding that application of the § 3B1.1(a) enhancement was erroneous where participants at issue were not "answerable to" the defendant in any way); see also United States v. Helbling, 209 F.3d 226, 244 (3d Cir. 2000) (holding that "evidence that certain individuals provided expertise . . . does not necessarily counter evidence that their actions were controlled by another" for purposes of § 3B1.1(a)).

### III.

For the foregoing reasons, we will affirm the judgment of conviction and sentence.